**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

AMY JO FRIZZO,

      Plaintiff,

vs.                                                       CASE NO. 6:11-cv-1318-ORL-31TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

This case is before the Court on Plaintiff's complaint (Doc. #1).  Plaintiff seeks review of the final decision of the Commissioner of Social Security denying Plaintiff's claims for disability insurance benefits ("DIB").  This Court has authority to conduct the requested review.  42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #14).  Defendant filed a brief in support of the decision denying disability benefits (Doc. #16).  The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  The parties did not consent to the exercise of jurisdiction by a magistrate judge, but the case has been referred to the undersigned for a report and recommendation.

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided

_____

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

in the transcript of the underlying proceedings.  Upon review of the record, the Court found that the issues raised by Plaintiff were fully briefed and concluded that oral argument would not benefit the Court in making its determinations.  Accordingly, the matter has been decided on the written record.  For the reasons set out herein, the undersigned recommends that the Commissioner's decision be **REVERSED and this case REMANDED for further proceedings.**

## I. Procedural History

Plaintiff filed applications for a period of disability and disability insurance benefits, alleging disability beginning June 30, 2009 (Tr. 99-100, 135).  Plaintiff's applications were denied initially and upon reconsideration (Tr. 48-50, 52-53).  Plaintiff requested an administrative hearing, which was held on November 17, 2010 (Tr. 26-45).  The administrative law judge ("ALJ") issued a decision denying Plaintiff's applications on December 13, 2010 (Tr. 9-20).  Plaintiff filed a request for review, which the Appeals Council denied on June 17, 2011 (Tr. 1-4).  Plaintiff filed the instant action in federal court on August 9, 2011 (Doc. #1).

## II. Summary of the ALJ's Decision

A plaintiff may be entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner has established a five-step sequential evaluation process for

determining whether a plaintiff is disabled and therefore entitled to benefits.[2]  *See* 20 C.F.R. § 404.1520[3]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

In 1996, Congress amended the statutory definition of disability under the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled.  *See* Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 105(a)(1) and 105(b)(1), 110 Stat. 847, 852-53 (codified as amended at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) (1996)).  The Regulations make clear that a finding of disability is a condition precedent to the application of the amended law.  *See* 20 C.F.R. § 404.1535(a).  The Regulations state that "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  *Id.*  The key factor to be considered is whether the claimant would still be disabled absent the drug addiction or alcoholism.  20 C.F.R. § 404. 1535(b)(1).  "[T]he claimant bears the burden of proving that his alcoholism or drug addiction is not a

---

[2] First, if a claimant is engaging in substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.  20 C.F.R. § 404.1520(f).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(g).  A plaintiff bears the burden of persuasion through step four, but the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

[3] Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition.

contributing factor material to his disability determination." *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).

If a claimant is initially disabled when considering substance abuse, the ALJ must evaluate the claimant's physical and mental limitations that would remain if the claimant were to stop using alcohol and drugs.  20 C.F.R. § 404.1535(b)(2).  Substance abuse is deemed a "contributing factor material" to the finding of disability if, presuming the claimant were to stop abusing substances and considering the claimant's remaining limitations, those remaining limitations would not independently be disabling.  20 C.F.R. § 404.1535(b)(2)(ii).  As noted above, if substance abuse is a "contributing factor material" to the finding of disability, then the Act precludes a finding of disability.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

In the instant case, the ALJ found that Plaintiff met the Social Security Act's insured status requirements through December 31, 2014 (Tr. 11).  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2009, the alleged onset date.  *Id.*  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "borderline intellectual functioning; major depressive disorder, recurrent; posttraumatic stress syndrome; polysubstance abuse, alcohol and marijuana; and, obesity" (Tr. 12).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13).  The ALJ found Plaintiff's mental impairments caused mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation (Tr. 13).  At step four, the ALJ

found that Plaintiff lacked the residual functional capacity ("RFC") to perform a full range of sedentary work, was unable to sustain work on a regular and continuing basis at acceptable levels of performance in a competitive work environment, and was unable to work on an eight-hour day, five-day per week basis.  *Id.*  The ALJ further found at steps three and four that Plaintiff was unable to perform past relevant work and there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform (Tr. 13-14).  Thus, the ALJ found Plaintiff was disabled.

The ALJ next considered Plaintiff's limitations that would remain if she stopped the substance use.  At step two, the ALJ determined that if Plaintiff stopped the substance use, her remaining limitations would cause more than a minimal impact on her ability to perform basic work activities, and she would continue to have a severe impairment or combination of impairments.  (Tr. 14).  At step three, the ALJ determined that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)) (Tr. 14-15).  The ALJ found, if Plaintiff stopped the substance abuse, her remaining mental impairments would cause mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation (Tr. 15). At step four, the ALJ found that if Plaintiff stopped the substance use, she had the residual functional capacity

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand and follow simple instructions, can perform simple, routine, repetitive work, can make basic work decisions, can adapt to changing work environments, and she can interact appropriately with co-workers and supervisors; she cannot meet quotas or similar production requirements.

5

*Id.* Considering this RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a sales clerk and informal waitress (Tr. 19).  Continuing to step five, the ALJ found, in the alternative, that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform (Tr. 19-20).  The ALJ found Plaintiff would not be disabled if she stopped the substance use, and such substance use disorder was a contributing factor material to the disability determination (Tr. 20).  Therefore, the ALJ found Plaintiff was not under a disability since June 30, 2009, the alleged onset date.  *Id.*

### III. Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established . . . and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole,

taking into account evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. Although the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding the claimed impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is the plaintiff's burden to provide the relevant medical and other evidence establishing disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### IV. Summary of Plaintiff's Mental Health Records

Because Plaintiff focuses on her mental impairments in this appeal, the Court summarizes the relevant medical evidence.

On June 16, 2003, Plaintiff was admitted to an in-patient program at St. Anthony's Health Center with complaints of increased degree of anxiety, severe depression, an extreme degree of paranoia, agitation, difficulty with daily activities, recurrent nightmares and suicidal ideations (Tr. 199).   She was admitted with a diagnosis of bipolar depressive illness, mixed type; history of episodic alcohol and drug abuse; suspected personality disorder; and was assigned a Global Assessment of Functioning ("GAF") score of 20[4] (Tr. 203).   Plaintiff reported she had a history of mental, physical and sexual abuse (Tr. 201). She was discharged on June 22, 2003 with an improved GAF score of 40[5] (Tr. 199).

On June 30, 2003, Plaintiff was readmitted to St. Anthony's Health Center after taking an overdose of medication (Tr. 216). Plaintiff reported she was upset and depressed over her grandmother's recent death.  *Id.*  She was admitted with a GAF score of 15-20 (Tr. 217).   She was discharged on July 4, 2003 with an improved GAF of 40 (Tr. 214).

On July 16, 2003, Plaintiff was readmitted to St. Anthony's Health Center due to an increased degree of depressive symptomatology and suicidal ideations (Tr. 220).  She was

---

[4] The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF of 11-20 is defined as "some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 34 (4th ed., American Psychiatric Assoc. 2000) (hereinafter "DSM-IV").

[5] A GAF of 31-40 is defined as "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  DSM-IV.

assessed a GAF of 25-30 on admission[6] (Tr. 223).  Plaintiff was treated with individual psychotherapy, psychotropic medication, and milieu therapy (Tr. 220).  She was discharged on July 21, 2003 with an improved GAF of 40 (Tr. 221).

On July 7, 2009, Plaintiff was admitted to Florida Hospital for depression, anxiety and suicidal thoughts (Tr. 265). She was assessed with depressive disorder, not otherwise specified; borderline personality disorder; psychosocial stressors, including chronic mental illness, medication noncompliance, recent substance abuse, poor coping skills; and was assigned a GAF score of 35 (Tr. 270). She was discharged on July 13, 2009 by Dr. Antonio Canaan with an improved GAF of 60[7] (Tr. 266).  Dr. Canaan noted Plaintiff's concentration was good and her thought processes were appropriate.  *Id.*  Her memory and judgment were good, and she denied suicidal or homicidal ideations at the time of discharge.  *Id.*

On August 3, 2009, Plaintiff was taken to Halifax Port Orange Hospital Emergency Room by ambulance for an intentional drug overdose after she reported she had taken forty-two tablets of Lyrica and consumed a lot of alcohol (Tr. 289).  Plaintiff was positive for high levels of alcohol and cannibis, but showed "little evidence of an overdose of Lyrica" (Tr. 284).  Dr. Wallace E. Combs noted Plaintiff "[f]reely admits to and perhaps exaggerates drug use and suicide attempts, and "[c]annot explain why she has not had a successful attempt" (Tr. 285).   Dr. Combs diagnosed polysubstance abuse, alcohol induced

---

[6] The range of 21-30 is defined as "behavior is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)."  DSM-IV.

[7] A GAF of 51-60 is defined as manifesting "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)." DSM-IV.

depression, passive dependent personality disorder, and assessed a GAF of 45.[8]  *Id.*  Dr. Combs concluded, "I have no doubt that she will continue making such attempts but have no hope that providing her with medications is likely to alter her passive-dependant personality disorder or her substance dependence."  *Id.*  He recommended outpatient counseling.  *Id.*

On August 6, 2009, Plaintiff was involuntary committed under the Florida Baker Act to Stewart Marchman Act Behavioral Healthcare due to not being able to trust herself to not try and commit suicide (Tr. 428, 431).  Plaintiff was discharged on August 10, 2009, after she requested to leave (Tr. 430).  Dr. Leo Salter diagnosed alcohol intoxication; alcohol abuse, dependence; marijuana abuse; personality disorder with histrionic traits; and assessed a GAF of 76-86.[9]  *Id.*

Plaintiff was referred to Dr. Katherine Billiot, Psy.D., a clinical psychologist, for a neuropsychological evaluation conducted over four visits in September 2009 (Tr. 436-44). Dr. Billiot diagnosed polysubstance dependence; major depressive disorder, recurrent, moderate; post traumatic stress disorder; cognitive disorder, not otherwise specified; and avoidant personality disorder, with dependant features (Tr. 444).  She assigned Plaintiff a GAF of 45.  *Id.*  Plaintiff's IQ test revealed a full scale score of 72, borderline intellectual functioning (Tr. 443).  Dr. Billiot found Plaintiff had limited social skills and "difficulty interpreting the normal nuances of interpersonal behavior" (Tr. 441).  Dr. Billiot noted "there

---

[8] A GAF of 41-50 is defined as "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV.

[9] A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning.  DSM-IV.

was a great sense of depressive symptoms, low self-esteem, apathy, and high risk for suicidal behaviors." *Id.* Dr. Billiot also noted, "[Plaintiff's] psychological findings revealed a general tendency to magnify symptomology to the extent that intentional exaggeration might be considered. With this said, the results across all of the measurements taken were highly consistent and would be difficult to malinger." *Id.* Dr. Billiot concluded the evaluation "revealed a chronic tendency to engage in self-destructive behaviors, including addictive tendencies" and stated "it is likely that her symptoms could be less severe during periods of sobriety" (Tr. 444). Dr. Billiot believed Plaintiff's symptoms at that time were "too severe for her to benefit from Vocatioal Rehabilitation services" and recommended Plaintiff apply for Social Security disability benefits. *Id.* Dr. Billiot found Plaintiff's suicidal thoughts were likely chronic in nature and recommended Plaintiff continue therapy and substance abuse treatment. *Id.* Finally, Dr. Billiot noted Plaintiff presented with clear signs of potential brain damage from reported head injuries, but the neuropyschological findings were "somewhat non-conclusive, given her ongoing and heavy use of alcohol and less regular use of marijuana." *Id.*

On October 27, 2009, Plaintiff voluntarily checked herself into the psychiatric unit at Florida Hospital due to increased sadness of mood, psychomotor retardation, feelings of hopelessness and worthlessness, and thoughts of deliberate self-harm (Tr. 459). She did not show objective or subjective signs of alcohol or drug withdrawal. *Id.* She was assigned a GAF score of 30 upon admission (Tr. 460). Plaintiff underwent intensive counseling and was discharged on November 2, 2009 by Dr. Sanjeev Singh with an improved GAF score of 50 (Tr. 457). Upon discharge, Dr. Singh found Plaintiff's memory functions were intact, and her judgment and insight were fair. *Id.*

On November 23, 2009, Plaintiff was admitted under Baker Act to Halifax Medical Center due to possible drug overdose after Plaintiff told police she had taken ninety tablets of gabapentin "because she did not want to deal with life" (Tr. 608).  Dr. James T. Moore assessed major depression and post-traumatic stress disorder, and assigned Plaintiff a GAF of 35 (Tr. 604).  Plaintiff reported feeling depressed and believed she needed psychiatric hospitalization.  *Id.*  During her consultation with Dr. Moore, Plaintiff denied suicidal thoughts but acknowledged that was in part due to being in a safe environment. *Id.*  Plaintiff was discharged on November 25, 2009 (Tr. 601).

Plaintiff received counseling with Deborah Winchock-Ebert, LMHC, clinical supervisor for Sexual Assault Response Team, beginning in August 2006 (Tr. 405-420. 667).  She was diagnosed with major depressive disorder and post-traumatic stress disorder (Tr. 405).  Plaintiff reported being molested by her mother's boyfriend when she was twelve years old (Tr. 416). She also reported being emotionally abused and neglected by her mother growing up (Tr. 419). Plaintiff reported she was raped by her ex-husband two times (Tr. 416).  On November 3, 2009, Ms. Winchock-Ebert submitted a letter on Plaintiff's behalf (Tr. 405).  Ms. Winchock-Ebert stated, "In my therapeutic opinion, [Plaintiff] is emotionally fragile."  *Id.*  Ms. Winchock-Ebert reported Plaintiff had recurrent distressing nightmares, avoids crowds, has physiological reactivity when exposed to internal or external cues that remind her of her traumatic experiences, and handles her symptoms by abusing alcohol.  *Id.*  On June 21, 2010, Ms. Winchock-Ebert submitted a second letter explaining Plaintiff experienced symptoms consistent with trauma-related anxiety and depression, and had been diagnosed with post-traumatic stress disorder and dysthymic disorder, and (Tr. 667).  Ms. Winchock-Ebert stated Plaintiff "is constantly battling the

12

effects of physical, emotional and sexual abuse she has endured during her lifetime." *Id.* Ms. Winchock-Ebert found Plaintiff was "lethargic, but oriented," and "motivated." *Id.* Ms. Winchock-Ebert found Plaintiff's memory was "intact and forthcoming," there was no evidence of hallucinations or delusion, and she had a flat affect. *Id.*

On January 20, 2010, Michael Zelenka, Ph.D., a non-examining state agency consultant, reviewed the record and found Plaintiff suffered from alcohol dependence; major depressive disorder, recurrent; and anxiety disorder, not otherwise specified (Tr. 484). Dr. Zelenka found Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation (Tr. 478). Dr. Zelenka found Plaintiff was moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to set realistic goals or make plans independently of others (Tr. 478, 482-483). Dr. Zelenka found the diagnoses of cognitive disorder and post-traumatic stress disorder were not adequately supported by the evidence and were contaminated by effects of alcohol abuse (Tr. 484). Dr. Zelenka noted, "[I]t is obviously her alcohol abuse that is significantly limiting her behavior presently." *Id.* Dr. Zelenka concluded, "[W]hen sober and with some allowances, [Plaintiff] retains adequate mental

ability to carry out simple instructions and to relate appropriately to others in a routine work setting."  *Id.*

On March 13, 2010, Plaintiff was admitted to Halifax Health under Baker Act due to altered mental status changes and possible drug overdose (Tr. 509).  Plaintiff was brought in by emergency services after she told her husband she no longer wanted to live and took and unknown amount of medication.  *Id.*  Drug toxicology screen showed elevated levels of benzodiazepines and alcohol.  *Id.*  Upon admission, Plaintiff denied depression or suicidal thoughts to Dr. James Moore (Tr. 515).  Plaintiff was diagnosed with an unintentional overdose and dependent personality disorder.  *Id.*  Dr. Moore noted Plaintiff had been hospitalized in August 2009 and November 2009 with unintentional overdoses of benzodiazepines and alcohol.  *Id.*  Dr. Moore stated both him and Dr. Combs felt the overdoses were unintentional in each case.  *Id.*  Plaintiff was cleared by psychiatry and discharged on March 16, 2010 (Tr. 509).

On June 16, 2010, Plaintiff saw Carlos M. Sanchez, M.D. for a consultative disability evaluation at the request of the Office of Disability Determinations (Tr. 642-644).  Dr. Sanchez noted Plaintiff had a slight loss of affect and broke down in tears when questioned about her past psychiatric history (Tr. 643).  Dr. Sanchez diagnosed "bipolar/depression" (Tr. 644).  Dr. Sanchez recommended Plaintiff be evaluated by psychiatry and noted, "There is no physical reason why this patient should not be able to maintain a job."  *Id.*

On June 17, 2010, James Levasseur, Ph.D., a non-examining state agency consultant, reviewed the record (Tr. 649-65).  Dr. Levassuer found Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes

of decompensation (Tr. 659).  Dr. Levasseur found Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 659, 663-64).  Dr. Levasseur concluded Plaintiff is able to: understand and follow instructions; demonstrate a cooperative attitude; make basic work decisions; and adapt adequately to work environments (Tr. 665).  Dr. Levasseur noted Plaintiff had "some reduction in concentration that would limit pace and persistence occasionally but not at a level that would significantly reduce productivity."  *Id.*  He also found Plaintiff had "some reduction in social interaction/stress tolerance that would limit her to work environments of low social demand."  *Id.*

At the hearing, Plaintiff testified she has been hospitalized ten to twenty times for suicide attempts, and first tried to commit suicide when she was fourteen years old (Tr. 33). Plaintiff testified she takes Effexor, Lyrica, Prozax, and respidon (Tr. 35).  She testified her medications cause the side-effect of sleepiness, and she sleeps seven or eight hours during the day.  *Id.*  She testified she has heard voices in the past and has suicidal thoughts during the day.  *Id.*  She testified her medication makes her less tearful and emotional but she still has suicidal thoughts (Tr. 36).  She testified she has experienced depression and suicidal thoughts since she was molested at the age of twelve.  *Id.*  Plaintiff testified she was a recluse and stays in her home.  *Id.*  Plaintiff testified she sees a sexual

15

abuse counselor once a week (Tr. 37).   Plaintiff testified she has a hard time with her attention span and has memory problems (Tr. 41).

## V. Analysis

Plaintiff presents three closely related issues in her appeal.   Plaintiff contends that the ALJ (1) erred in not considering all of the duties of Plaintiff's past work; (2) relied on misquoted vocational expert testimony at step four of the sequential evaluation process; and (3) was required to utilize a vocational expert at step five of the sequential evaluation process.

### A. The ALJ's step four determination

At step four of the five-step sequential evaluation process, the ALJ must determine whether or not the claimant is able to return to his or her past relevant work.   "Past relevant work" is work experience that was done within the last fifteen years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity.   20 C.F.R. § 404.1565(a). If the claimant is found to be able to perform the duties of his [or her] past relevant work, then he or she is considered not disabled and therefore ineligible for benefits.

The claimant bears the burden of proving the inability to perform his previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir.1990).   The claimant must show the inability to do the type of work performed in the past, not merely the specific job he or she held. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir.1986).   The ALJ must consider all of the duties of the past work and evaluate the claimant's ability to perform those duties in spite of the impairments. *Lucas*, 918 F.2d at 1574 n.3.   Vocational expert testimony is not

necessary in determining whether a claimant can perform past relevant work.  *Lucas*, 918 F.2d at 1573 n.2.

Plaintiff argues the ALJ committed error at step four in two ways: (1) he did not consider all of the duties of Plaintiff's past work; and (2) he misrepresented the vocational expert's testimony.

The ALJ found Plaintiff had the ability to perform a full range of work at all exertional levels but with the following nonexertional limitations: "she can understand and follow simple instructions, can perform simple, routine, repetitive work, can make basic work decisions, can adapt to changing work environments, and she can interact appropriately with co-workers and supervisors; she cannot meet quotas or similar production requirements" (Tr. 15).  The ALJ then found Plaintiff "would be able to perform past relevant work as sales clerk and informal waitress," because such work "does not require the performance of work related activities precluded by the residual functional capacity" (Tr. 19).  The ALJ stated the vocational expert testified "that based on the claimant's residual functional capacity, she could perform her past relevant work as sales clerk and informal waitress."  *Id.*  The ALJ also stated he compared the claimant's RFC with the physical and mental demands of this work and found she could perform it as actually and generally performed.  *Id.*

The Court's independent review reveals the record differs substantially from the ALJ's representation, and thus it is impossible to say the ALJ's decision is supported by substantial evidence.  The ALJ misrepresented the vocational expert's testimony, because

no such testimony as recounted by the ALJ was solicited or offered.  The only testimony given by the vocational expert in this case is as follows:

> ALJ: Mr. Pigue, what can you tell us, if anything, about the claimant's vocational history?
>
> VE: I did receive and review of [sic] vocational exhibits, your honor, prior to the hearing.  Two relevant jobs were documented as past work.  The voc [sic] exhibit indicated sales clerk, retail, customer services from 200 [sic] through 20008 [sic], apparently, in an off-and-on capacity.  That is lit [sic] exertional, with an SVP of three.  It's semi-skilled employment.  And also waitress. Waiter, waitress, inform.  Again, '94 through '09, with the notation of off and on.  Again, a light exertional, with an SVP of three.

(Tr. 29).  At the hearing, the ALJ did not ask a hypothetical question in any form.  Nor did the ALJ state a residual functional capacity for the claimant.  At no point in the hearing did the ALJ refer to any limitations or impairments attributable to Plaintiff.  The VE was never given a hypothetical containing Plaintiff's RFC and never testified Plaintiff could perform her past relevant work based on her residual functional capacity.  The sole extent of the VE's testimony was the identification of Plaintiff's past relevant work.  The ALJ's determination cannot be based on testimony from a vocational expert that does not exist.  *See Goulet v. Astrue*, No. 3:06-cv-975-J-TEM, 2008 WL 681049, at *6 (M.D. Fla. Mar. 7, 2008) (remand necessary where ALJ relied on VE testimony that plaintiff could return to past relevant work when record revealed no such testimony was actually solicited or offered); *see also Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (remand necessary where the ALJ's "paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); *Lampp v. Astrue*, No. 3:07-cv-93-J-TEM, 2008 WL 906641, at *3 (M.D. Fla. Mar. 31, 2008) (remand appropriate where ALJ misquotes the record).

The ALJ is not required to use a vocational expert at step four of the sequential evaluation process.  *Lucas*, 918 F.2d at 1573 n.2.  However, the Regulations specifically provide for the utilization of a vocational expert in making the determination of whether a claimant can return to past relevant work.

> We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).

In order for the ALJ's decision to be supported by substantial evidence, there must be some basis for his determination that Plaintiff can return to her past relevant work. Because the ALJ did not elicit VE testimony and did not cite to the Dictionary of Occupational Titles in his decision, it is unclear what vocational resource he utilized in reaching his determination. *See Dial v. Comm'r of Soc. Sec.*, 403 Fed. Appx. 420 (11th Cir. 2010) ("[W]hile the ALJ could have chosen to rely on the DOT [in determining plaintiff could perform his past relevant work], he instead relied only on the testimony of the VE, who was not instructed on all of [plaintiff's] limitations.  Thus, we cannot say that the ALJ's error was

harmless."); *Waldrop v. Comm'r of Soc. Sec.*, 379 Fed. Appx. 948, 953 (11th Cir. 2011) (holding ALJ's determination that plaintiff could perform past relevant work was supported by substantial evidence where: (1) VE testified the position of human resources clerk could be performed by an individual with plaintiff's limitations, referred to the DOT number, and averred her testimony was consistent with the information set forth in the DOT; (2) the ALJ stated he had determined plaintiff was capable of performing the position of human resources clerk by comparing her RFC and the physical and mental demands posed by the job; and (3) in making this determination, the ALJ referred to the DOT identification number for this position, as well as the VE testimony); *cf. Crawford v. Astrue*, No. 08-0714-KD-B, 2010 WL 610372, at *10 (S.D. Ala. Feb. 18, 2010) (ALJ's misrepresentation of VE testimony was harmless error where ALJ did not rely on VE testimony but relied on DOT to determine plaintiff could perform past work).

The undersigned also notes it is not immediately apparent that a person with the RFC identified by the ALJ could perform the positions of sales clerk and waitress.  The ALJ found Plaintiff had the following nonexertional limitations: "she can understand and follow simple instructions, can perform simple, routine, repetitive work, can make basic work decisions, can adapt to changing work environments, and she can interact appropriately with co-workers and supervisors; she cannot meet quotas or similar production requirements" (Tr. 15).

"The Social Security Administration has stated that where the claimant has the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting, then an RFC of 'unskilled' work would be appropriate."  *Craft v. Astrue*, 539 F.3d

668, 677 (7th Cir. 2008) .  In this case, the RFC crafted by the ALJ tracks the language of

the definition of unskilled work contained in SSR 96-9p.[10]  Thus, the ALJ essentially found

Plaintiff capable of unskilled work with the additional limitation that she could not meet

quotas or similar production requirements.   However, he then concluded, without

explanation, that Plaintiff could perform her past relevant work, which was identified as

semi-skilled.[11]  Without explicit findings concerning the functional demands of Plaintiff's past

work, the Court cannot ascertain how the ALJ arrived at his conclusion.  *See Childs v.*

*Astrue*, No. 8:07-cv-299-T-TBM, 2008 WL 686160, at *4 n.1 (M.D. Fla. Mar. 10, 2008)

("[T]he decision lacks any explicit findings concerning the functional demands of any of this

past work only the blanket conclusion that Plaintiff could still do this type of work.  Thus,

how the ALJ arrived at his conclusion is unclear.").

---

[10] SR 96-9p states:

These mental activities are generally required by competitive, remunerative, unskilled work:

* Understanding, remembering, and carrying out simple instructions.
* Making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions.
* Responding appropriately to supervision, co-workers and usual work situations.
* Dealing with changes in routine work setting.

SSR 96-9p, 1996 WL 374185, at *9 (S.S.A. July 2, 1996).

[11] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  20 C.F.R. § 404.1568(a).  Semi-skilled work is work which needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 404.1568(b).

Based on the foregoing, the undersigned finds the ALJ committed error at step four of the sequential evaluation process.[12]  When an ALJ has committed error at step four, it may be harmless error if his alternative finding at step five is correct.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).  Accordingly, the Court will turn to Plaintiff's argument that the ALJ erred in failing to utilize VE testimony at step five.

## B. The ALJ's step five determination

In order to ascertain whether the Commissioner met his burden at step five, the Court must determine whether the ALJ in this case properly made a finding of not disabled based on direct application of the GRIDS, in lieu of relying on vocational testimony. Typically, an ALJ may either apply the GRIDS or use the testimony of a vocational expert to determine whether the claimant is able to adjust to other work in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004).  However, the ALJ may not exclusively rely on the GRIDS either when the claimant is unable to perform a full range of work at a given work capacity level or when the claimant has nonexertional impairments that significantly limit basic work skills.  *Id.* at 1242.

Eleventh Circuit case law strongly suggests a preference for use of a vocational expert where nonexertional impairments limit a claimant's ability to work.  In *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999), the court found exclusive reliance on the GRIDS is not appropriate where the claimant has nonexertional impairments that significantly limit

---

[12] The Court does not reach the issue of whether the RFC adequately accounts for Plaintiff's moderate difficulties in maintaining concentration, persistence or pace.  However, the Courts notes that when an ALJ uses vocational testimony, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).

basic work skills.  By definition, any severe impairment is one which significantly limits a claimant's basic work skills. *See* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is **not severe** if it does not significantly limit your physical or mental ability to do basic work activities") (emphasis added).  In *Walker v. Bowen*, the court held that exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a nonexertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).  Where nonexertional limitations exist, the preferred method of demonstrating a claimant can perform specific work is through the testimony of an a vocational expert. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *see also Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) ("Ordinarily, when non-exertional limitations are alleged, vocational testimony is used.").  When nonexertional impairments are present that would not allow for the performance of a full range of work, exclusive reliance upon the GRIDS is inappropriate and vocational expert testimony is required to determine whether the claimant's limitations are severe enough to preclude the performance of a wide range of work. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  As stated in *Williams v. Halter*, 135 F.Supp.2d 1225, (M.D. Fla. 2001), "It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Id.* at 1235 (internal citations omitted).

Although a vocational expert was present at the hearing, the witness was not asked a hypothetical containing Plaintiff's RFC and was not asked to testify to whether an individual with Plaintiff's limitations could perform other work.  Rather, in reaching the

alternative conclusion at step five, the ALJ looked solely to the GRIDS for support of his

conclusion.  The ALJ stated as follows:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education and work experience, a finding of "not disabled" would be directed by Medical Vocational Rule 202.21.  However, the additional limitations had little or no effect on the occupational base of unskilled light work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.

(Tr. 20).

The undersigned finds that the ALJ's determination that Plaintiff's nonexertional

limitations had "little or no effect on the occupational base for unskilled light work" is not

supported by substantial evidence.  The ALJ did not offer a specific explanation for his

finding that there was no erosion of the occupational base.  The ALJ determined Plaintiff

had the severe impairments of borderline intellectual functioning, major depressive

disorder, recurrent, and posttraumatic stress syndrome, which "would cause more than a

minimal impact on the claimant's ability to perform basic work activities" (Tr. 14).

Specifically, the ALJ found Plaintiff had mild difficulties in maintaining social functioning,

moderate difficulties in maintaining concentration, persistence, or pace, and could not meet

quotas or similar production requirements (Tr. 15).  It is conceivable that such limitations

would have more than a minimal effect on the vocational base of unskilled light work.

"Absent testimony from a vocational expert, the ALJ's conclusion that appellant's mental

limitations do not significantly compromise her basic work skills or are not severe enough

to preclude her from performing a wide range of light work is not supported by substantial

evidence."  *Allen*, 880 F.2d at 1202; *see also Boone v. Barnhart*, 353 F.3d 203, 210 (3rd Cir.

2003) (explaining that when the case involves difficult judgments as to whether the

occupational base has been eroded, "a VE can provide a more individualized analysis as to what jobs the claimant can and cannot perform"); *Byrd v. Astrue*, No. 08-00584-KD-B, 2010 WL 551391, at *6-7 (S.D. Ala. Feb. 10, 2010) (holding ALJ erred in not obtaining the testimony of a vocational expert where it was conceivable that nonexertional limitations could have more than minimal effect on vocational base); *King v. Astrue*, No. 3:06-cv-808-J-TEM, 2008 WL 697357, at *9 (M.D. Fla. Mar. 13, 2008) ("Without the benefit of vocational testimony, the ALJ's conclusion that Plaintiff's 'capacity for sedentary work is substantially intact and has not been compromised by any non-exertional limitations' is not supported by substantial evidence."); *Childs v. Astrue*, No. 8:07-cv-299-T-TBM, 2008 WL 686160, at * (M.D. Fla. Mar. 10, 2008) ("Absent a clear statement by the VE of the full impact of Plaintiff's nonexertional impairments, it is impossible to determine whether the ALJ appropriately decided the case on his own or erred by not calling on the VE to address the effect of the mental limitations on Plaintiff's ability to perform other work."). On the facts of the instant action, the ALJ's reliance on the GRIDS to direct a determination of non-disability was improper and vocational expert testimony should have been obtained.

## VI. Conclusion

For the foregoing reasons, the undersigned finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards. The Commissioner's decision should be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the

findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips*, 357 F.3d at 1244.

For the reasons stated herein, the undersigned **recommends the Commissioner's decision be REVERSED and the case be REMANDED for additional proceedings** consistent with the findings in this Report and Recommendation.  The undersigned further recommends the Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**DONE AND ENTERED** at Jacksonville, Florida, this 7th day of August, 2012.


THOMAS E. MORRIS
United States Magistrate Judge


Copies to:
Hon. Gregory A. Presnell
All counsel of record